IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT E. HOOD,

    Defendant.

Cr. No. 20-711 JAP

## MEMORANDUM OPINION AND ORDER

On February 26, 2020, a federal grand jury charged Defendant Robert E. Hood in a one-count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924.[1] Defendant seeks to suppress the firearm and ammunition upon which that charge is based as the fruits of an unlawful search.[2] For the reasons below, the Court will deny Defendant's Motion.

### BACKGROUND[3]

Defendant is a convicted felon. Hr'g Tr. at 4:18–19.[4] On March 21, 2019, the New Mexico Adult Parole Board approved Defendant for release on parole. *See* CERTIFICATE OF PAROLE (Doc. 40-1). At that time, the Parole Board set Defendant's parole to expire on February 13, 2020. *Id.*

---

[1] *See* INDICTMENT (Doc. 14).
[2] *See* MOTION TO SUPPRESS EVIDENCE ("Motion") (Doc. 38). The Motion is fully briefed. *See* UNITED STATES' RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE FILED ON JULY 17, 2020 (Doc. 40); DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO SUPPRESS EVIDENCE (Doc. 41).
[3] The following section constitutes the Court's essential findings of fact under Federal Rule of Criminal Procedure 12(d).
[4] This MEMORANDUM OPINION AND ORDER cites to the court reporter's unofficial transcript. All page and line citations are subject to change on the official, edited transcript.

On April 29, 2019, Probation/Parole Division ("PPD") Officer Cassandra Baca was assigned to supervise Defendant. Hr'g Tr. at 4:12. Officer Baca has over eight years of experience as a PPD officer. *Id.* at 3:22. During her tenure, she has supervised close to 1,000 parolees and probationers. *Id.* at 3:23–25.

The Certificate of Parole contains Defendant's conditions of parole. *Id.* at 5:11–17. One of the standard conditions stated that Defendant "will not illegally possess, use, or sell any narcotic drugs, controlled or synthetic substance, or drug paraphernalia." Doc. 40-1 at 2. Defendant was similarly prohibited from possessing any firearms, ammunition, or other deadly weapons. *Id.* Another condition provided that Defendant "will permit [his] Parole Officer or Corrections officials to visit [him] at all reasonable times, places, and will submit to reasonable warrantless searches per New Mexico Corrections Department policy." *Id.* at 2. On April 29, 2019, Defendant signed the Certificate of Parole, acknowledging these conditions and others. *Id.*[5]

Shortly after Officer Baca was assigned to supervise Defendant, Defendant advised her of his concerns about his parole expiration date. Hr'g Tr. at 24:5–12. With those concerns in mind, on May 14, 2019, Officer Baca confirmed with Offender Management Services staff manager Denise Chavez that Defendant's parole expiration date was indeed February 13, 2020. *See* EMAIL CORRESPONDENCE (Doc. 40-3 at 1).[6] Officer Baca communicated that information to Defendant. Hr'g Tr. at 25:6–8.

On December 23, 2019, Officer Baca, along with three other PPD officers, visited Defendant's residence. *See* NEW MEXICO CORRECTIONS DEPARTMENT REPORT (Doc. 38-4). At that time, the officers had been conducting random field visits. Hr'g Tr. at 11:22.

---

[5] Additionally, Officer Baca and an intake officer both separately advised Defendant of his conditions of parole. Hr'g Tr. at 10–17.
[6] Notably, as a PPD officer, Officer Baca does not calculate or determine parole expiration dates. *See* Hr'g Tr. at 36:17–25, 37:7–8. That is the responsibility of Offender Management Services and the Parole Board. *Id.* at 36:19–20.

Officer Baca had no reason to suspect that Defendant had violated any laws or the terms of his parole. *Id.* at 11:23–25, 12:1.

When they arrived at Defendant's residence, Officer Baca noticed that Defendant's vehicle was parked outside. *Id.* at 12:3–4. She proceeded to knock several times on Defendant's door. *See* Doc. 38-4. A few minutes later, Defendant came to the door and the officers entered his residence. Hr'g Tr. at 12:6–9. Once inside, Officer Baca noticed a woman she did not recognize sitting on the couch. *Id.* at 12:11–12. Officer Baca asked Defendant to take a seat on the couch next to the woman, and he complied. *Id.* at 29:2–7. Officer Baca then asked the woman for her identification. *Id.* at 29:11–12. The woman gave Officer Baca a fake name. *Id.* at 29:13–14. On Officer Baca's prompting, Defendant explained that the woman was homeless and pregnant. *Id.* at 12:16. Defendant had purportedly felt sorry for her and invited her to stay with him. *Id.* at 12:16–17. Defendant further explained that his girlfriend was also present. *Id.* at 12:19–20. Officer Baca walked to the bedroom and asked Defendant's girlfriend to join them in the living room. *Id.* at 12:24–25.

While in the living room, Officer Baca noticed a small baggie containing a white residue on the couch between the unidentified woman and Defendant. *Id.* at 13:12–13. Having seen methamphetamines on approximately 100 other occasions, Officer Baca believed with high certainty that the white substance in the baggie was methamphetamines. *Id*. at 13:20–21, 14:1, 4. Defendant denied having any knowledge of the baggie, yet he admitted to getting high off methamphetamines a few days before. *Id.* at 14:11–14.

Officer Baca and another officer then conducted a search of Defendant's bedroom. *Id.* at 15:24. While in the bedroom, the officers found a loaded firearm tucked between the mattress and box spring. *Id.* at 15:24–25, 16:1–3. Office Baca then placed Defendant in mechanical restraints and called law enforcement to the residence. *Id.* at 16:9, 16.

On February 3, 2020, the New Mexico Adult Parole Board retroactively changed the expiration date of Defendant's parole from February 13, 2020, to December 13, 2019. *See* CERTIFICATE OF PAROLE DISCHARGE (Doc. 38-2).[7] Officer Baca did not discover that retroactive change until about six months after the change. *See* Hr'g Tr. at 16:18 – 22 (explaining that she was not aware of the change until several weeks before the Court's August 6, 2020, hearing). During her eight-and-a-half years as a PPD Officer, Officer Baca had "never had this [retroactive change] happen before." *Id.* at 37:21. She testified that she had no way of knowing that the Parole Board would retroactively modify Defendant's parole end date. *Id.* at 39:11–14. But despite that peculiarity, Officer Baca testified that Defendant's parole did in fact end on December 13, 2020. *Id.* at 37:12–14.

## STANDARD

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The basic purpose of this Amendment, as recognized in countless decisions of th[e Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Ct. of City & Cty. of S.F.*, 387 U.S. 523, 528 (1967). To effectuate this basic purpose, the Supreme Court "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009).

Generally, the protections of the Fourth Amendment attach when there exists "official intrusion into that private sphere." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). That

---

[7] At the August 6, 2020, hearing, neither party presented any evidence explaining why the New Mexico Adult Parole Board retroactively modified Defendant's parole expiration date. Although Defendant suggested that he had accrued good time credits that would account for the change, *see* Hr'g Tr. 19:9–15, the Court heard no evidence to that effect.

4

situation "generally qualifies as a search and requires a warrant supported by probable cause." *Id.* But "[t]he Supreme Court has recognized two exceptions to the Fourth Amendment's warrant requirement in the parolee/probationer context[.]" *United States v. Mathews*, 928 F.3d 968, 975 (10th Cir. 2019), *cert. denied,* 140 S. Ct. 460, 205 L. Ed. 2d 285 (2019). Relevant here is the "totality-of-the-circumstances exception," which "authorizes warrantless searches without probable cause (or even reasonable suspicion) by police officers with no responsibility for parolees or probationers when the totality of the circumstances renders the search reasonable." *United States v. Warren*, 566 F.3d 1211, 1216 (10th Cir. 2009) (citing *Samson v. California*, 547 U.S. 843 (2006); *United States v. Knights*, 534 U.S. 112 (2001)).

"The totality-of-the-circumstances 'exception is predicated on (1) the reduced (or absent) expectation of privacy . . . for probationers and parolees and (2) the needs of law enforcement.'" *Mathews*, 928 F.3d at 976 (quoting *Warren*, 566 F.3d at 1216). "[W]hen the terms of a parolee's parole allow officers to search his person or effects with something less than probable cause, the parolee's reasonable expectation of privacy is significantly diminished." *United States v. Pacheco*, 884 F.3d 1031, 1041 (10th Cir. 2018) (internal quotation marks omitted). The Court must "balance this significantly diminished expectation of privacy against the government's interest in apprehending violators of the criminal law." *Mathews*, 928 F.3d at 976 (quoting *Pacheo*, 884 F.3d at 1041).

"As a general matter, a search of a parolee or probationer 'authorized by state law' satisfies the totality-of-circumstances exception." *Mathews*, 928 F.3d at 976 (quoting *United States v. Mabry*, 728 F.3d 1163, 1167 (10th Cir. 2013)). A defendant's "own parole agreement and the state regulations applicable to his case" determine whether a search of a parolee is authorized by state law. *Freeman*, 479 F.3d at 748. Accordingly, "[p]arolee searches are . . . example[s] of the rare

5

instance in which the contours of a federal constitutional right are determined, in part, by the content of state law." *Mathews*, 928 F.3d at 976 (quoting *Mabry*, 728 F.3d at 747–48).

Under New Mexico law a warrantless search of a parolee must be supported by reasonable suspicion of parole violations. *See State v. Baca*, 90 P.3d 509, 522 (N.M. 2004). "Reasonable suspicion is a less demanding standard than probable cause." *United States v. Mabry*, 728 F.3d 1163, 1167 (10th Cir. 2013) (quoting *United States v. Tucker*, 305 F.3d 1193, 1200 (10th Cir. 2002)). It requires "an awareness of specific articulable facts, judged objectively, that would lead a reasonable person to believe criminal activity occurred or was occurring." *Baca*, 90 P.3d at 522. "[A]n officer 'need not rule out the possibility of innocent conduct'; he or she simply must possess 'some minimal level of objective justification' for making the stop." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (quoting *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004)). Information "falling 'considerably short' of a preponderance standard" will meet the standard for reasonable suspicion. *Winder*, 557 F.3d at 1134 (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

But if law enforcement officers lack authority to conduct a warrantless search, the remedy is the exclusionary rule, which allows courts to exclude the unlawfully seized evidence in a criminal prosecution. *See United States v. Herrera*, 444 F.3d 1238, 1248 (10th Cir. 2006). The exclusionary rule is "harsh" and should only be invoked "when doing so furthers the purpose of that rule, which is 'designed to deter police misconduct.'" *Id.* at 1248–49. Therefore, courts utilize the good-faith exception to the exclusionary rule, which is applied when officers act with "objective good faith." *Id.* at 1249. The good-faith exception is narrow and is used "ordinarily only where an officer relies, in an objectively reasonable manner, on a mistake made by someone other than the officer." *Id.*

DISCUSSION

Defendant argues that the evidence discovered during the search of his residence must be suppressed because he was not on parole on the date of Officer Baca's home visit, and thus he was not subject to the conditions of parole that provided for the search of his residence. Doc. 38 at 7. Alternatively, he argues, that even if he was on parole at the time of the search, the parole officers lacked reasonable suspicion to conduct a warrantless search of his residence. *Id.* at 8. The Court will address Defendant's arguments in reverse order.

1. Reasonable suspicion to search the residence

Officer Baca's search of Defendant's residence was justified under the totality-of-the-circumstances exception to the warrant requirement for parolees. While the totality-of-the-circumstances exception allows for the search of a parolee's residence on something less than reasonable suspicion in certain situations, the exception is satisfied if the state law requirements for a search of a parolee's residence are met. *Warren*, 566 F.3d at 1216. New Mexico law requires that a warrantless search in such circumstances be supported by reasonable suspicion. *Baca*, 90 P.3d at 522.

Officer Baca had reasonable suspicion that multiple parole violations were occurring in the residence and thus had authority under New Mexico law to search Defendant's residence. For one, Officer Baca testified that she observed in plain view a baggie containing a white substance, which she believed from her experience to be methamphetamine. That alone is a specific articulable fact that would lead a reasonable person to believe a crime—and parole violation—had occurred or was occurring. Moreover, Defendant confessed to Officer Baca that he had gotten high off methamphetamines a few days prior. At that point, Office Baca had sufficient reasonable suspicion of parole violations to justify the search of Defendant's residence. *See Baca*, 90 P.3d at 522.

Because the search of Defendant's residence was supported by reasonable suspicion, as required by New Mexico law, the totality-of-the-circumstances justified the search. *See Mathews*, 928 F.3d at 976 (explaining that if a search of a parolee satisfies state law, the totality-of-the-circumstances exception to the warrant requirement is likewise satisfied).

2. Good faith exception

The next question is whether Officer Baca's presence at Defendant's residence was permissible at all—i.e., whether Defendant was on parole when Officer Baca conducted the home visit on December 23, 2019. At the August 6, 2020, hearing, Officer Baca testified that on December 23, 2019, Defendant was in fact no longer on parole. Hr'g Tr. at 37:12–14. She further testified that on that date, there was no way she could have known or discovered that the New Mexico Adult Parole Board would, months later, retroactively modify the expiration date of Defendant's parole to December 13, 2020. *Id.* at 39:11–14.

Given that testimony and the retroactive effect of the New Mexico Parole Board's Certificate of Parole Discharge, the Court finds that as of December 23, 2020, Defendant was no longer on parole. Nevertheless, the Court concludes that the good faith exception to the exclusionary rule applies. The Court will deny Defendant's Motion on that basis.

Under the good faith exception to the exclusionary rule, improperly obtained evidence is admissible when the executing officers "act with an objectively 'reasonable good-faith belief' that their conduct is lawful or when their conduct involves only simple, 'isolated' negligence . . . ." *Davis v. United States*, 564 U.S. 229, 238 (2011) (citations omitted) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984) and *Herring v. United States*, 555 U.S. 135, 137 (2009)). The rationale for the exclusionary rule "is to deter future Fourth Amendment violations." *Davis*, 564 U.S. 229, 236 (2011). Thus, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence

is worth the price paid by the justice system." *Herring*, 555 U.S. at 147. But when law a law enforcement officer acts "in an objectively reasonable manner, on a mistake made by someone other than the officer," "there is no police illegality and thus nothing to deter." *United States v. Loera,* 923 F.3d 907, 925 (10th Cir.), *cert. denied,* 140 S. Ct. 417, 205 L. Ed. 2d 238 (2019) (citation omitted).

Defendant argues that the good faith exception is inapplicable here because Officer Baca was unreasonable in her mistaken belief about the expiration date of Defendant's parole. *See* Doc. 41 at 3–6.[8]

In the Court's view, Defendant's argument is foreclosed by *Herring v. United States*, 555 U.S. 135 (2009), and *Arizona v. Evans*, 514 U.S. 1 (1995). In *Herring*, the Supreme Court addressed whether the good faith exception applied when an officer mistakenly relied on a warrant that had earlier been recalled. 555 U.S. at 137. There, a clerk informed a law enforcement officer that an arrest warrant had been issued. *Id.* That incorrect information lead to Herring's arrest, which further lead to the discovery of methamphetamines in Herring's pocket and a pistol in his vehicle. *Id.*[9] The clerk's mistake was later discovered. *Id.* at 138. Nevertheless, the Supreme Court held that the good faith exception to the exclusionary rule applied. *Id.* at 144. In particular, the Court explained, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence," and that the error in that case did not rise to that level. *Id.*

Similarly, in *Arizona v. Evans*, 514 U.S. 1 (1995), the Supreme Court answered "whether the exclusionary rule requires suppression of evidence seized incident to an arrest resulting from

---

[8] While Defendant characterizes the retroactive modification of his parole expiration date as a mistake, no evidence was presented to the Court that Offender Management Services or the Parole Board made a mistake. Indeed, neither party explained to the Court the curious nature of the retroactive Certificate of Parole Discharge.
[9] Herring, as a felon, could not possess a pistol. *Herring*, 555 U.S. at 137.

an inaccurate computer record, regardless of whether police personnel or court personnel were responsible for the record's continued presence in the police computer." *Id.* at 6. The Supreme Court held that it did not. *Id.* at 14. Even though the warrant in *Evans* had been quashed, the Supreme Court reasoned that the arresting officer had reasonably relied on the computerized information showing an outstanding warrant. *Id.* at 15–16.

From these cases, the following principles emerge: first, the absence of a warrant does not necessarily preclude the application of the good faith exception, and second, reasonable reliance on available information—whether mistaken or not—likewise does not necessarily preclude its application. The important inquiry focuses on officer culpability and the deterrent effect of excluding the challenged evidence. *See Herring*, 55 U.S. at 144.

The Court concludes that Officer Baca reasonably relied on the information available to her about Defendant's parole expiration date, and because there is no evidence that she engaged in intentionally unconstitutional behavior, there is no misconduct to deter by excluding the evidence. As the Court has now repeatedly stressed, on December 23, 2019, Officer Baca could not have known that the New Mexico Adult Parole Board would the following year retroactively change Defendant's parole expiration date. Hr'g Tr. at 39:11–14. And because "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment,'" *Illinois v. Krull*, 480 U.S. 340, 348–49 (1987) (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975), the Court will not suppress the evidence here. The Court does not—and cannot—expect state agents to be precognizant of decisions for which they are not responsible.

IT IS THEREFORE ORDERED THAT Defendant's MOTION TO SUPPRESS EVIDENCE (Doc. 38) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE